Pearson, J.
 

 By the deed of Joel Cannon, a separate estate in the use of the slaves vested in the wife of the plaintiff for life, with a remainder to her children. The children had no more right or claim to the profits and hires of the slaves during her life-time than she had to the slaves after her death. Had the profits and hires been received by her, any part thereof remaining on hand at her death, would have belonged to the plaintiff as husband,
 
 jwe mariti.
 
 As they were not paid over, but remained in the hands of the .trustee, the administrator of the wife becamo entitled thereto, to pay such debts as she might have contracted in anticipation thereof, and the plaintiff was entitled to the surplus;
 
 Molony
 
 v.
 
 Kenady,
 
 10 Simons, 254;
 
 Johnston
 
 v.
 
 Lumb,
 
 15, Ibid, 308. Bell on Husband and Wife, 64, Law Lib. 493; McQueen, 285. The case put in the argument: — If a bond he given, any interest
 
 *460
 
 accrued at the time of the gift will pass as an incident, — is not applicable. A more apposite case is, a bond or bank-stock is given to A for life, remainder to B : Has B any pretext for setting up a claim to the interest or dividends which accrue during the life-time of A ?
 

 The case turns upon the validity of the deed of transfer. ¥e are satisfied that it was obtained under such circumstances as make it against conscience for the defendants to set it up or seek to claim any benefit under it. The pleadings and proofs present this general view : An ignorant old man is entitled to a fund of some $1500, the accrued profits of slaves while they were held by a trustee for the separate use of his wife. His children and sons-in-law are entitled to the slaves. One of the sons-in-law administers upon the estate of the wife. Counsel is consulted by the latter in regard to their rights and the proper mode of proceeding in order to get the fund out of the hands of the trustee. They are advised that they are not only entitled to the slaves, but to the accrued profits, the counsel falling into error by this fallacious reasoning which is set out in the answer: “ The plaintiff cannot, surely, have a greater interest in the profits of the slaves after the death of his wife, than he had during the coverture, and by the terms of the deed the property is to be held to her
 
 exclusive use.”
 
 So, it is concluded that the old man had no right to the profits; but the counsel advised, “ out of abundant caution, the plaintiff had better release his interest, if any, in the hire and profits,” so as to relieve the children of all difficulty in bringing the trustee to account. Accordingly, the counsel draws up a formal deed, reciting the deed of settlement, the substitution of the defendant Gunn in the place of the original trustees, and that the plaintiff,
 
 “
 
 being willing to carry out, to the full extent, the will of his late father-in-law, Joel Cannon, in its provision for his daughter and her children, in consideration thereof, and in further consideration of one dollar, u doth bargain and sell, transfer, make over, and assign” to his children and sons-in-law, all the slaves and their increase, and also doth
 
 “
 
 hereby make
 
 *461
 
 over and assign all right, title and interest, which I have as husband, or may have as administrator of my wife, to the profits and hires of said slaves accrued in her life-time, &c.” This deed is handed to the defendant Cobb, who procures the old man to execute it; neither the old man, nor Cobb, nor the subscribing witness, being able to read it; but Cobb tells him that it gives up all right or claim to the slaves and'their profits, and informs him what lawyer drew it; the old man remarks, “ I do not believe he wrnuld do any thing to injure me,” and thereupon he executes it. So, it is manifest that it was executed by the plaintiff in ignorance of his rights; which ignorance was induced by an error of the counsel employed by the defendants, in whom the plaintiff had entire confidence, not only as a lawyer, but as a man ; and it is also manifest that it was executed by the plaintiff for the purpose of enabling his children and sons-in-law to prosecute successfully what he supposed were their rights against the trustee, who held the property and the accrued profits. A simple statement of the circumstances, under which the execution of the deed was procured, is enough to show that it is against conscience for the children and sons-in-law to turn upon the old man and use this deed, not for the purpose for which he executed it, but for the purpose of depriving him of what justly belongs to him.
 

 The same conclusion follows from a particular view of the part acted by the defendant Cobb. He says he carried the deed to the plaintiff and
 
 got hi/m to sign it.
 
 He told him its contents' — did. not tell him he was to have
 
 Peggy as the consideration of executing it;
 
 “ lie might have said, and probably did say, that, when he went to house-keeping, old Peggy could work for him; but he never intended, nor did the plaintiff understand, that he was to have the use of Peggy as a matter of right.” This is the account he gives of the manner
 
 in which he got the old ma/n to sign it.
 
 Haralson, the subscribing witness, flatly contradicts him. “ Mr. Cobb told Mr. Powell, if he signed that paper he would sign away all of his interest in the estate finally and forever, and
 
 we ham dll agreed to give
 
 
 *462
 

 you the olcl negro woman Peggy P
 
 “ Mr. Powell replied, that is just as much as I wanted, as they are all my children, and as he only wanted her to cook and wash for him.” “Mr. Cobb told Mr. Powell, if he died, the negro must comeback to the children.” Mr. Powell replied, “he had no use for the negro after his death.” “ Mr. Powell then signed it and I witnessed it.” The witness says none of them could read the paper, and adds, “ I think he said something about his not believing that the counsel, who drew the paper, would do any thing io injure him.”
 

 The other defendants say, they never did agree to let the plaintiff have Peggy as a consideration for executing the deed; on the contrary, they say they did not believe the plaintiff had any right to the slaves or the profits, and they still deny his right. So, the plaintiff was induced to execute the deed, not only in ignorance of his rights and
 
 aliena
 
 intentione, but by means of a direct falsehood in regard to the consideration, which was told to him by the defendant Cobb, acting for himself and as their agent. They repudiate his act. The consideration, being a parol agreement to transfer an interest in a slave, cannot be enforced, and as a matter of course, they cannot avail themselves of the iniquity of their agent.
 

 The plaintiff is entitled to the relief prayed for.
 

 Pee OueiaM, Decree accordingly.